UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

MICHAEL CHARLES,

                        Plaintiff,

          v.

COUNTY OF NASSAU, NASSAU COUNTY
POLICE COMMISSIONER LAWRENCE
MULVEY, NASSAU COUNTY POLICE CHIEF
OF DETECTIVES STEVEN SKRYNECKI, in his
official and individual capacity, NASSAU
COUNTY POLICE DETECTIVE LIEUTENANT
KEVIN SMITH, in his official and individual
capacity, NASSAU COUNTY POLICE
DETECTIVE RENE YAO, in his official and
individual capacity, NASSAU COUNTY POLICE
DETECTIVE CHARLES DECARO, in his official
and individual capacity, NASSAU COUNTY
POLICE DETECTIVE SERGEANT RICHARD
DORSI, in his official and individual capacity,
INCORPORATED VILLAGE OF HEMPSTEAD,
VILLAGE OF HEMPSTEAD TRUSTEE PERRY
PETTUS, in his official and individual capacity,
VILLAGE OF HEMPSTEAD POLICE CHIEF
JOSEPH WING, in his official and individual
capacity, KENNETH POWELL and JOHN DOES
#1–5,

                        Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-2709 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Michael Charles commenced the above-captioned action against Defendants

County of Nassau, Nassau County Police Commissioner Lawrence Mulvey, Nassau County

Police Chief of Detectives Steven Skrynecki, in his official and individual capacity, Nassau

County Police Detective Lieutenant Kevin Smith, in his individual and official capacity, Nassau

County Police Detective Rene Yao, in his official and individual capacity, Nassau County Police

Detective Charles Decaro, in his official and individual capacity, Nassau County Police

Detective Sergeant Richard Dorsi, in his official and individual capacity, John Does #1–5

(collectively, "County Defendants"), Incorporated Village of Hempstead, Village of Hempstead

Trustee Perry Pettus, in his official and individual capacities, Village of Hempstead Police Chief

Joseph Wing, in his official and individual capacities (collectively, "Village Defendants"), and

Kenneth Powell.[1]  Plaintiff asserts federal claims pursuant to 42 U.S.C. § 1983, and various state

law claims.

      County Defendants moved for summary judgment and Village Defendants moved for

judgment on the pleadings, or in the alternative for summary judgment.  In opposition, Plaintiff

sought leave to amend his Complaint.  The Court referred the motions to Magistrate Judge Gary

R. Brown for a report and recommendation.  (Order dated June 3, 2014.)  By report and

recommendation dated February 20, 2015 ("R&R"), Judge Brown recommended that the Court

deny in part and grant in part Defendants' motions.  For the reasons set forth below, the Court

adopts Judge Brown's R&R in its entirety.

## I.  Background

      In his Complaint, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for: false arrest

against all Defendants; First Amendment retaliation against Pettus and Wing; *Monell* liability

against the County of Nassau and Incorporated Village of Hempstead; and conspiracy against

Pettus, Wing, Yao, Decaro, Dorsi and Skrynecki.  In addition, Plaintiff asserts New York State

---

[1]  John Does #1–5 and Kenneth Powell have not entered appearances in this action and do not move for summary judgment.  Summons were issued as to Powell and John Doe Defendants on June 6, 2011, (*see* Docket Entry dated June 6, 2011), but no executed summons was returned. Therefore, the Court *sua sponte* dismisses the action against John Does #1–5 for failure to identify these Defendants, *see Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300–01 (S.D.N.Y. 2009), and orders Plaintiff to show cause as to why the action should not be dismissed against Powell for failure to serve, *see Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012).

law claims for: false arrest against all individual Defendants; defamation against Pettus, Wing, Powell and Skrynecki; abuse of process against Pettus, Wing, and Powell; and intentional infliction of emotional distress against all Defendants.

On May 6, 2014, County Defendants moved for summary judgment and Village Defendants moved for judgment on the pleadings, or in the alternative for summary judgment. In opposition, Plaintiff sought leave to amend his Complaint. On June 3, 2014, the Court referred the motions to Judge Brown for a report and recommendation, and Judge Brown issued his report and recommendation on February 20, 2015. After multiple extensions granted by this Court, on April 22, 2015, Village Defendants filed objections to Judge Brown's R&R.[2] (Vill. Def. Obj. to R&R ("Def. Obj."), Docket Entry No. 94.) Plaintiff filed responses to the Village Defendants' objections. (Pl. Opp'n to Def. Obj. ("Pl. Opp'n"), Docket Entry No. 95.)

Having reviewed the R&R and the parties' submissions, the Court grants the County of Nassau and Incorporated Village of Hempstead's motions for summary judgment as to Plaintiff's *Monell* claims and dismisses Plaintiff's state law claims for defamation and intentional infliction of emotional distress as withdrawn. The Court denies Defendants' motions for summary judgment as to Plaintiff's claims for First Amendment retaliation, § 1983 conspiracy, abuse of process under state law, and false arrest under state and federal law, and denies Plaintiff's motion for leave to amend the Complaint. The Court *sua sponte* dismisses the action as to John Does #1–5, and orders Plaintiff to show cause why the action should not be dismissed as to Powell.

### a. Factual background

The Court assumes familiarity with the facts at issue in this action, which are presented in

---

[2] After initially seeking an extension of time to file objections to the R&R, County Defendants submitted a letter to the Court indicating that they would not file objections. (Docket Entry No. 92.)

greater detail in Judge Brown's R&R. The Court recounts below the factual background

necessary to resolve Village Defendants' objections.

On the afternoon of March 7, 2010, a shooting occurred on Peters Avenue in Hempstead,

New York. Plaintiff, who at the time was a volunteer Fire Chief at the Hempstead Village Fire

Department, responded to Peters Avenue to offer medical assistance to the victims. (Charles

Aff., annexed to Decl. of Mariel LaSasso ("LaSasso Decl.") as Ex. 3, ¶¶ 4–9.) Plaintiff contends

that when he arrived on the scene, a responding police officer indicated to him the direction in

which the suspected perpetrator of the shooting had fled.[3] (*Id.* ¶ 11.) Plaintiff pursued the

suspect and encountered Defendant Powell, who appeared to match the description of the shooter

from the Peters Avenue incident. (*Id.* ¶¶ 12–14.) Plaintiff and Defendants dispute what

happened between Powell and Plaintiff,[4] but it is not disputed that Plaintiff stopped Powell,

questioned him, requested his identification, and quickly learned that Powell's father was

Defendant Village of Hempstead Trustee Perry Pettus. (*Compare id.* ¶¶ 15–17 *with* Cty. Def.

56.1 ¶ 5.) Plaintiff claims that, the following evening, he reported to the Nassau County Police

Department ("NCPD") that Powell was "one of the gunmen in the Peters Avenue shooting."

(Charles Aff. ¶ 20.)

Powell reported the March 7, 2010 encounter with Plaintiff to the NCPD as a crime

against him. (Cty. Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1.) On March 8, Powell contacted his father,

---

[3] The police officer, Sergeant Johnson, testified before a grand jury that he never asked
Plaintiff to assist him in locating the suspect. (Grand Jury Testimony of Sgt. Johnson dated July
21, 2010, annexed to LaSasso Decl. as Ex. 12, 11:1–14.)

[4] Powell signed a statement on March 8, 2010, which states that Plaintiff had a shotgun,
told Powell not to move, and that Powell felt scared for his safety. (Cty. Def. 56.1 ¶¶ 3–5; Pl.
56.1 ¶¶ 3–5; Statement, annexed to Decl. of Peter A. Laserna in Supp. of Cty. Def. Mot.
("Laserna Decl.") as Ex. E, 1.)

Defendant Pettus, complaining of his encounter with Plaintiff. Pettus then contacted his friend Defendant Joseph Wing, Chief of the Village of Hempstead Police, to ask what Wing "was going to do about it." (Direct Exam. of Joseph Wing in Bench Trial Tr., annexed to LaSasso Decl. as Ex. 2, 218:17–219:3.) Wing called Detective Lieutenant Raymond Cote of NCPD's Third Squad. (*Id.* at 218:17–220:2.) According to Plaintiff, Detective Yao of the NCPD informed Plaintiff that Cote and Pettus met privately on March 8. (Charles Aff. ¶ 28.) Following a brief investigation,[5] on the evening of March 8 at 11:00 PM, Plaintiff arrived at the NCPD Third Squad where he was interrogated by two NCPD detectives. (Cty. Def. 56.1 ¶¶ 13–17; Pl. 56.1 ¶¶ 13–17.) Plaintiff contends that one of the detectives, Defendant Yao, reported to Plaintiff that Cote directed his arrest, that his arrest was coming from "down there," meaning the Hempstead Police Department, and that it was "political." (Charles Aff. ¶¶ 28–30.) Plaintiff was arrested for menacing in the second degree and possession of a dangerous weapon in the fourth degree. (Cty. Def. 56.1 ¶¶ 18–21; Pl. 56.1 ¶¶ 18–21; *see* Arrest Report, annexed to Laserna Decl. as Ex. H, 1–2.)

Plaintiff was indicted for menacing in the second degree, unlawful imprisonment in the second degree, and criminal impersonation in the second degree. (Order dated Dec. 1, 2010, annexed to Decl. of Thomas Lai in Further Supp. of Cty. Def. Mot. ("Lai Decl.") as Ex. L, 1.) The state court judge determined that the evidence was legally insufficient to support charges of unlawful imprisonment in the second degree and criminal impersonation in the second degree, but allowed the charge for menacing in the second degree to proceed to a bench trial. (*Id.*; *see generally* Bench Trial Tr., annexed LaSasso Decl. as Ex. 2.) Following trial, the state court

---

[5] Plaintiff attests that there is a dispute as to whether Cote ordered an investigation or simply ordered Plaintiff's arrest. (Pl. 56.1 ¶ 2.)

judge found Plaintiff not guilty.[6]  (*Id.* at 459:14–15.)

### b. Procedural background

Plaintiff filed his Complaint on June 6, 2011, and County Defendants and Village Defendants filed their Answers to the Complaint on November 21, 2011 and December 5, 2011, respectively.  (Docket Entry Nos. 16, 19.)  Defendants Powell and John Does #1–5 never appeared in the action, nor did they file an answer.  No summons was ever returned for either Powell or the John Doe defendants.  The Court *sua sponte* dismisses without prejudice the action against John Does #1–5 for failure to identify these Defendants.  *See Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300–01 (S.D.N.Y. 2009) (dismissing claims against John Doe defendants when plaintiff was unable to identify them in five years since complaint was filed).  Plaintiff is hereby ordered to show cause as to why the Court should not dismiss the action against Powell for failure to serve the Complaint.[7]

---

[6]  The verdict was based, in part, on the judge's determination that Defendant Powell was not a credible witness, as Powell "swore under oath that on two separate occasions he knowingly and falsely accused two innocent people of the acts complained of in this indictment.  He also s[aid] he was encouraged to do so at the urging of the detectives."  (Bench Trial Tr. 457:12–16.)

[7]  Typically, a party must be given notice and an opportunity to show cause as to why the action should not be dismissed before a court *sua sponte* dismisses a complaint for failure to serve, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  *Meilleur*, 682 F.3d at 61 ("In the Rule 4(m) context, a district court abuses its discretion when, among other things, it dismisses a complaint *sua sponte* for lack of service without first giving notice to the plaintiff and providing an opportunity for her to show good cause for the failure to effect timely service."); *Chavis v. Zodlow*, 128 F. App'x 800, 802 (2d Cir. 2005) (vacating *sua sponte* dismissal for failure to serve when court did not provide plaintiff with an opportunity to show cause as to why he failed to serve the complaint); *Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002) (same).  The specific facts of each case govern whether dismissal is appropriate, including whether it is "in no way evident to the court that process had been properly served, or that such service was likely imminent."  *Meilleur*, 682 F.3d at 63.  In this case, more than four years have passed since Plaintiff filed his Complaint, Plaintiff has not taken any steps to correct the failure to serve, and there is no indication that service is imminent.  *See Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 346 (S.D.N.Y. 2005) (dismissing complaint

### i.    Discovery history

Since the inception of this case, the parties to this action have had substantial difficulty complying with court-ordered deadlines, which has led to repeated disagreement over the direction of the litigation.  Following the Answers to the Complaint, the parties engaged in very little discovery within the court-ordered deadlines.  At an initial pre-trial conference held on December 8, 2011, Magistrate Judge E. Thomas Boyle set June 30, 2012 as the deadline for the parties to complete all discovery.  Initial disclosures were to be served on or before December 30, 2011.  (Docket Entry No. 22.)  By letter dated April 12, 2012, Plaintiff sought a 45-day extension of time for all parties to respond to outstanding discovery requests, (Docket Entry No. 23), which request was granted and discovery was extended through August 14, 2012, (Order dated April 13, 2012).  On August 14, 2012, Plaintiff submitted a second request for an extension of time to complete discovery, through November 19, 2012, (Docket Entry No. 25), which was again granted, (Order dated August 15, 2012).  A third and final request for extension was granted on November 16, 2012, extending discovery through February 7, 2013.  (Docket Entry No. 26; Order dated November 16, 2012.)  On March 18, 2013, County Defendants made a subsequent untimely application to further extend discovery through July 26, 2013, which was denied as untimely on March 19, 2013.  (Docket Entry No. 29.)  In that same order, Judge Boyle certified discovery complete as of February 7, 2013, and directed the parties to file a joint pre-

---

for failure to serve defendant for more than two years, noting that plaintiff had been warned multiple times that failure to serve would result in dismissal).  Plaintiff is ordered to show cause within twenty (20) days of the date of this Memorandum and Order as to why the action should not be dismissed as to Powell.  Failure to do so will result in dismissal of the action against Powell.

trial order by March 29, 2013.[8] (*Id.*) Judge Boyle also warned the parties that failure to comply with the order "will expose any non-compliant party to sanctions, including preclusion at the time of trial." (*Id.*) The parties moved to extend the time to file a joint pre-trial order to April 5, 2013, which request was granted with a note that the "sanctions referenced in the order [] dated March 19, 2013 remain applicable." (Order dated April 3, 2013.)

Citing the dissolution of her law firm and the effects of Hurricane Sandy as the reason for her failure to meet Judge Boyle's deadlines, Plaintiff's counsel requested a conference regarding Judge Boyle's March 19, 2013 Order. (Docket Entry No. 30.) By letter dated April 4, 2013, Plaintiff requested that Judge Boyle reconsider his April 3, 2013 Order and denial of the requests to extend discovery, noting that Plaintiff had not received initial Rule 26 productions from Village Defendants, and had not deposed any witnesses. (Docket Entry No. 35, 2–3.) On the same day, Village Defendants responded that, despite serving Plaintiff with a Rule 26(a) initial disclosure on February 28, 2012, they had not received Plaintiff's initial disclosure. (Docket Entry No. 36.)

At an April 11, 2013 status conference, Judge Boyle granted a motion for reconsideration of his March 19, 2013 Order and affirmed his initial determination. (Docket Entry No. 40.) At the conference, it became clear that virtually no discovery was exchanged by or between the parties prior to the discovery deadline. Judge Boyle commented that Plaintiff was "fortunate in that there was a criminal trial in this case" and that he had "more of a record than you have in

---

[8] By letter to this Court dated March 25, 2013, County Defendants sought an extension of time to file a motion for summary judgment, citing their "mistaken[] belie[f]" that the discovery deadline in this matter would be extended" and noting that all parties "were in agreement that an extension would be requested." (Docket Entry No. 32.) The request for an extension of time to file the summary judgment motion was granted. (Order dated March 27, 2013.)

999 out of 1,000 cases in this court." (Tr. of Apr. 11, 2013 Status Conf. ("Apr. 11 Tr.") 6:12–20, Docket Entry No. 95-2.) Judge Boyle indicated that discovery could be done on a "consensual basis" but told the parties that court intervention was no longer an option. (*Id.* at 14:19–25.) Judge Boyle noted that the parties "had more than ample opportunity to do this case and as I say, you have the distinct advantage here of having a whole criminal record — criminal trial. So for all those reasons, in addition to what was stated in the original order, I'm going to deny your application in all other respects." (*Id.* at 20:24–21:4.) Judge Boyle reminded the parties that "to the extent that the parties want to engage in any kind of disclosure here, you all know that you have the right to do that up to and including any trial. . . . But court intervention is over." (*Id.* 22:4–9.)

### ii. Pre-Trial Order disputes

On April 5, 2013 and April 6, 2013, County Defendants and Plaintiff each filed a proposed pre-trial order. (Docket Entry Nos. 37, 38.) On April 19, 2013, Village Defendants sought to amend Plaintiff's proposed pre-trial order, arguing that evidence and witnesses were not disclosed prior to the February 7, 2013 discovery deadline. (Docket Entry No. 42.) On April 22, 2013, County Defendants also filed a motion to amend, arguing, *inter alia*, that Plaintiff failed to disclose several listed witnesses prior to the discovery deadline. (Docket Entry No. 43.) Plaintiff opposed the motions, indicating that the proposed evidence was proper because Plaintiff had made a substantial production on March 5, 2013, which included the criminal trial documents, although it was after the discovery deadline. (Docket Entry Nos. 47, 49.) Defendants submitted replies in support of their motions, reiterating their objections to Plaintiff's use of evidence produced after the discovery deadline. (Docket Entry Nos. 50, 51.) On May 14, 2013, Judge Boyle held a conference with the parties concerning the pre-trial order. (Docket

Entry No. 54.)  Defendants objected to Plaintiff's proposed witnesses, except the parties to this action, on the basis that the witnesses were not disclosed during the discovery period.  Village Defendants conceded that some of the exhibits were disclosed, but maintained objections to "all but ten" of Plaintiff's proposed exhibits.  (Tr. of May 14, 2013 Status Conference ("May 14 Tr.") 11:2–13:19, Docket Entry No. 52.)  During the conference, counsel for County Defendants noted that both Plaintiff and County Defendants failed to provide discovery responses until after discovery closed.  (*Id.* at 17–21.)  Counsel also noted that many of Plaintiff's exhibits were documents that County Defendants produced after the close of discovery.  (*Id.* at 27:4–13.)  Plaintiff asserted that all exhibits, with the exception of Plaintiff's exhibits labeled 75 through 90, were produced prior to the filing of the joint pre-trial order, but after discovery was closed.  (*Id.* at 31:8–21.)

On May 23, 2013, Judge Boyle denied Defendants' motion to amend the pre-trial order and vacated his April 3, 2013 order directing the parties to file a joint pre-trial order by April 5, 2013, pending the outcome of the motions for summary judgment.  (Docket Entry No. 53.)  Judge Boyle noted that "[t]he outcome of these summary judgment motions may well affect or moot out the pending motions by [D]efendants addressed to a plethora of alleged improprieties in [P]laintiff's portion of the pre-trial order" and denied the motions without prejudice to renew following a motion for summary judgment.  (*Id.* at 1–2.)

Defendants requested a pre-motion conference concerning their anticipated motions for judgment on the pleadings and summary judgment.  (Docket Entry Nos. 39, 41.)  On April 25, 2013, Plaintiff opposed the requests, seeking an additional extension of time for discovery.  (Docket Entry No. 46.)  Plaintiff indicated that Village Defendants had failed to produce any responsive documents, and that County Defendants had provided only limited document

discovery and a response to Plaintiff's first set of interrogatories.  (*Id.* at 2.)  Plaintiff also indicated that despite counsel's challenges with her law firm, Plaintiff had made a belated document production on March 5, 2013.  (*Id.*)  Plaintiff sought an extension of time to conduct limited depositions and compel certain documents.  (*Id.* at 2–3.)

### iii.  Appeal of discovery order

By letter dated June 3, 2013, Plaintiff again requested that the Court permit him to engage in limited discovery, with Court intervention, as very little had happened in the action and Plaintiff was unable to obtain certain documents without a motion to compel or depose certain witnesses without subpoenas.  (Docket Entry No. 55.)  The Court construed Plaintiff's requests as an appeal from Judge Boyle's order and, on July 15, 2013, denied the application to vacate Judge Boyle's ruling.  (Docket Entry No. 60.)  By letter dated August 6, 2013, Plaintiff attempted to obtain depositions of Brian Schuck, Gary Ferucci, Robert Napolitano and Henry Conyers, which applications Defendants opposed, stating that they did not intend to depose those witnesses.  (Docket Entry Nos. 95-4–95-8.)

### iv.  Pre-motion conference

On August 23, 2013, the Court held a pre-motion conference regarding Defendants' proposed motions to dismiss or for summary judgment pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure.  (Minute Entry dated August 23, 2013.)  On the record, counsel for Village Defendants indicated that they planned to move pursuant to Rule 12(c), or in the alternative for summary judgment.  (Tr. of Aug. 23, 2013 Pre-Motion Conference ("Aug. 23 Tr.") 4:9–11, Docket Entry No. 95-3.)  At the conference, counsel for County Defendants informed the Court that Plaintiff was likely to rely on evidence not provided before discovery closed in litigating the summary judgment motion.  (*Id.* at 17:19–18:6.)  The Court indicated that

Plaintiff could potentially proceed with the summary judgment motion by submitting affidavits of proposed witnesses.[9] (*Id.* at 20:11–19, 26:12–27:10.) Plaintiff's counsel indicated that Plaintiff wanted additional discovery, but stated that if the Defendants moved forward with their proposed motions, Plaintiff was prepared to oppose them. (*Id.* at 28:23–29:11.) The Court established a briefing schedule for the motions. (*Id.* at 29:15–30:6.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C); *see also Larocco v. Jackson*, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. 28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2. The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *See Rahman v. Fischer*, No. 10-CV-1496, 2014 WL 688980, at *1 (N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court

---

[9] At the conference, Anthony Fore was discussed as one of Plaintiff's proposed witnesses, who "places Defendant Pettus' son at the scene of the shooting." (Aug. 23 Tr. 24:18–25:5.)

need review that aspect of a report-recommendation only for clear error." (citations omitted));

*Time Square Foods Imports LLC v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the magistrate judge); *see also DePrima v. City of New York Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii.  Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Tolbert v. Smith*, --- F.3d ---, ---, 2015 WL 3875237, at *4 (2d Cir. June 24, 2015); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id*.  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Report and recommendation and Village Defendants' objections

In his R&R, Judge Brown recommends that the Court grant summary judgment to the County of Nassau and the Incorporated Village of Hempstead as to Plaintiff's *Monell* claim.

(R&R 32.) Judge Brown also recommends that the Court deny summary judgment in all other respects, dismiss Plaintiff's claims for defamation and intentional infliction of emotional distress under New York State law on consent, and deny Plaintiff's motion for leave to amend the Complaint as moot. (*Id.*)

After seeking extensions of nearly two months to object to the R&R, Village Defendants submitted objections to the R&R on three grounds, arguing: (1) Judge Brown improperly treated Village Defendants' motion for judgment on the pleadings, pursuant to Rule 12(c), as a motion for summary judgment, and should have dismissed the conspiracy and First Amendment retaliation claims pursuant to Rule 12(c); (2) Plaintiff should have been precluded from relying on any documents not disclosed prior to the February 7, 2013 discovery deadline; and (3) as a matter of law, Village Defendants were not responsible for Plaintiff's arrest, and thus Judge Brown should have dismissed Plaintiff's false arrest claim as to the Village Defendants. The Court addresses each objection separately below.

### i. Conversion to summary judgment motion

Judge Brown determined that "the motion by the Village Defendants, though captioned in the alternative, is properly treated as a motion for summary judgment." (R&R 14.) Village Defendants object to Judge Brown's treatment of their motion as a motion for summary judgment. (Def. Obj. 4–7.) Village Defendants contend that they "could not have reasonably recognized the possibility that their motion for a judgment on the pleadings would be converted to a summary judgment motion," (*id.* at 6), and that "at no time did the Village Defendants intend for the [C]ourt to consider their application as one for summary judgment." Village Defendants further contend that they were not given a reasonable opportunity to present all evidence relevant to a summary judgment motion, and that their motion should be treated as one

where the "movant made clear that they did not consider their motion as one for summary judgment." (*Id.* at 6 (citing *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904 (2d Cir. 1998))). Plaintiff argues that the motion was properly construed as one for summary judgment. (Pl. Opp'n 15–17.)

It is within a district court's discretion to convert a motion to dismiss or a motion for judgment on the pleadings to a motion for summary judgment when the parties have presented matters outside the pleadings, provided that the parties are given reasonable notice and an opportunity to present pertinent material before such a motion is converted. *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (discussing conversion of motion to dismiss pursuant to Rule 12(b)(6)); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (same); *see also* Fed. R. Civ. P. 12(d); *Best v. Bellevue Hosp. New York, NY*, 115 F. App'x 459, 461 (2d Cir. 2004) (discussing conversion of motions pursuant to Rule 12(b)(6) and 12(c)). "To determine whether the district court properly converted a 12(b)(6) or 12(c) motion into a motion for summary judgment, '[t]he essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Ayerst Labs.*, 850 F.2d at 911 (quoting *In re G. & A. Books, Inc.*, 770 F.3d 288, 295 (2d Cir. 1985)). Resolution of the question thus depends in part on whether the party was taken by surprise or deprived of the opportunity to present matters outside of the pleadings. *Id.*; *see also Sahu*, 548 F.3d 69 (finding that conversion was inappropriate when it was unclear at the close of briefing that the district court would accept the movant's invitation to consider extrinsic evidence and convert the motion into summary judgment).

Village Defendants' argument is unavailing and disingenuous. Although Village

Defendants never filed a statement of undisputed facts pursuant to Local Rule 56.1 in support of their motion,[10] and only attached to their motion Plaintiff's Complaint and the Village Defendants' answer,[11] they requested summary judgment, (*see* Mem. in Support of Vill. Def. Mot., Docket Entry No. 77, 1), and throughout their memoranda of law in support of the motion for summary judgment highlight the lack of evidence against them, (*see, e.g.*, *id.* at 2 (no evidence as to conspiracy claim); *id.* at 5 (no evidence as to false arrest claim); *id.* at 6 (same); *id.* at 8–10 (mixing pleading standard with summary judgment standard); Reply Mem. in Support of Vill. Def. Mot. 3–4 (setting forth standard for summary judgment); *id.* at 5–6 (arguing undisputed facts show not liable for conspiracy claim); *id.* at 7–8 (no facts to support false arrest claim, including criminal trial record); *id.* at 10 (Fourth Amendment claim not supported by the record)).  Village Defendants also cite to the County Defendants' motion for summary judgment multiple times, and to evidence submitted by Plaintiffs and County Defendants, specifically inviting the Court to consider matters outside the pleadings.  (Mem. in Support of Vill. Def. Mot. 5; Reply Mem. in Support of Vill. Def. Mot. 5–6, 7–8.)  Furthermore, Plaintiff made it clear in his opposition that he was considering Village Defendants' motion as a motion for summary judgment, given Village Defendants' inconsistency as to which standard they sought to have the Court apply.  (Pl. Mem. in Opp'n to Def. Mots. 5.)

---

[10]  Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1") requires the moving party to annex to the motion "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Rule 56.1(a).

[11]  The Declaration of Keith M. Corbett in support of the Village Defendants' motion indicates that, in addition to the pleadings, annexed to the declaration was a copy of a "Felony Complaint" from 2006.  (Decl. of Keith M. Corbett, Docket Entry No. 77-1, ¶ 4.)  Neither the electronic copy, filed under seal, nor the courtesy copy provided to this Court contains such an exhibit.

In addition, because Village Defendants invited the Court to rely on materials outside the pleadings, and were on notice that Plaintiff planned to treat the motion as one for summary judgment, they cannot now claim to be surprised that Judge Brown converted the motion to one for summary judgment, as he was required to do. *See Sira*, 380 F.3d at 68 (finding that a party is on notice of conversion if it should have recognized the possibility that the motion would be converted); *Gurary*, 190 F.3d at 43 (finding that because the plaintiff submitted the affidavit relied on by the district court, and thus invited the Judge to rely on the complaint and extraneous materials, he cannot claim to be surprised when the district court converted the motion to one for summary judgment — as the court was required to do); *Zynger v. Dep't of Homeland Sec.*, 615 F. Supp. 2d 50, 58–59 (E.D.N.Y. 2009) (finding plaintiff had adequate notice that defendant's motion would be treated as one for summary judgment when defendant moved for summary judgment in the alternative, requested summary judgment on certain claims, and submitted a statement of undisputed material facts pursuant to Local Rule 56.1 with its motion papers), *aff'd*, 370 F. App'x 253 (2d Cir. 2010). Village Defendants' reliance on *Ayerst Laboratories* to argue the contrary is misplaced, as Village Defendants continually referred to the summary judgment standard in their memorandum of law.[12] Moreover, Village Defendants have not demonstrated

---

[12] In *National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories*, the defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, identified in the alternative as a motion for summary judgment. In the course of the proceedings, the parties made it clear to the court that they were considering the defendant's motion as one for summary judgment only on a discrete issue, and both parties treated the motion as a motion to dismiss as to all other claims. *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 911 (2d Cir. 1998). The court granted the defendant summary judgment, and plaintiffs appealed, arguing that the judge erred by considering materials outside the complaint in deciding defendant's motion. *Id.* The Second Circuit determined that, while several factors weighed in favor of finding that plaintiffs should have been on notice that the motion would be converted to a motion for summary judgment as to all claims, the judge erred

prejudice, as they made the motion and had the opportunity to reply, which gave them a full opportunity to be heard.[13]  *See Sira*, 380 F.3d at 68 ("In any event, defendants cannot demonstrate prejudice.  Their complaint is not, after all, that judgment was entered in favor of [plaintiff] without affording them a full opportunity to be heard.  Their complaint is that judgment was not entered in their favor.").  Village Defendants' motion was properly construed as a motion for summary judgment.[14]

### ii.    Documents not produced during discovery

In the R&R, Judge Brown relied on evidence submitted by Plaintiff to find that there were genuine issues of material facts in dispute that precluded summary judgment on Plaintiff's Section 1983 claims against the individual Defendants, as well as Plaintiff's state law false arrest and abuse of process claims.  In particular, Judge Brown relied on Plaintiff's exhibits 2, 3, 4, 7, 10, 12, 16–19, 30 and 41, which documents correspond to exhibits 3, 45, 50 and 79 in Plaintiff's

by failing to notify plaintiffs that she was considering materials outside the pleadings in deciding all grounds.  *Id.* at 911–12.

[13]  In addition, there is no indication that Village Defendants have disclosed any documents to either party beyond what was already presented to the Court on the motion for summary judgment.  In their proposed pre-trial order, Village Defendants list Plaintiff and "All County Defendants['] witnesses" as their proposed witnesses, the Examination of Plaintiff pursuant to section 50-h of the General Municipal Law as "deposition testimony," and "The County Defendants['] exhibits" as their only proposed evidence.  (Vill. Def. Proposed Pre-Trial Order 3–4, Docket Entry No. 42-1.)  Thus, there is no indication that Village Defendants would have presented any additional evidence to the Court if given a further opportunity to do so.

[14]  In arguing that the motion was not properly converted to a motion for summary judgment, the Village Defendants contend that they were entitled to dismissal as to Plaintiff's conspiracy and First Amendment retaliation claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, because as pleaded, those claims are based on nothing more than conclusory allegations and unsubstantiated speculation.  As the Court finds that Judge Brown properly treated the Village Defendants' motion as a motion for summary judgment, the Court has reviewed Judge Brown's analysis as to Plaintiff's conspiracy and First Amendment retaliation claims for clear error, *infra*.

proposed pre-trial order, the transcript of Plaintiff's examination taken pursuant to Rule 50-h of

the General Municipal Law, and Affidavits of Plaintiff and of Anthony Fore, a proposed witness.

In so considering, Judge Brown did not explicitly address Village Defendants' argument,

articulated to him for the first time in their reply brief in further support of their dispositive

motion, that "most of the documents cited in Plaintiff's Opposition papers as bearing facts were

not produced and therefore should not be considered [pursuant to Rule 37 of the Federal Rules of

Civil Procedure]."[15] (Reply Mem. in Support of Vill. Def. Mot. 8.) Village Defendants argued

that they were prejudiced by this disclosure, and thus Plaintiff should be subject to the sanction

of preclusion, resulting in dismissal of Plaintiff's claims. (*Id.* at 8–9.)

Village Defendants now argue that Plaintiff was precluded from relying on any document

not produced prior to the close of discovery, contending that they will be substantially harmed if

Plaintiff is permitted to "utilize evidence that was not disclosed as a basis for defeating a

dispositive motion." (Def. Obj. 7–8.) They contend that "[t]he Court did not accept the

Plaintiff's justifications for not providing discovery and, on three (3) occasions affirmed its

decision to close discovery as of February 7, 2013." (*Id.* at 8.) Village Defendants argue that

they will be prejudiced if Plaintiff is allowed to "bypass" discovery and use evidence that was

not disclosed as a basis for defeating a dispositive motion, stating that such a practice is the type

of "sandbagging" discovery rules are meant to prohibit. (*Id.*)

Plaintiff argues that Village Defendants' current arguments were presented to Judge

---

[15]  Although Village Defendants state that "most of the documents . . . were not
produced," the Court understands Village Defendants' argument to be that most of the
documents were not produced prior to the end of the discovery period. (*See* Reply Mem. in
Support of Vill. Def. Mot. 8 ("During the discovery period, the Plaintiff produced very little
discovery."); Def. Obj. 7–8 (noting that the evidence Plaintiff used to oppose the motion was not
produced in discovery).)

Boyle and decided in his May 23, 2013 Order.  (Pl. Opp'n 5.)  Plaintiff contends that Judge

Boyle granted him leave to use documents from the criminal action in opposition to the motion

for summary judgment, and urges the Court to review Judge Boyle's May 23, 2013 Order for

clear error.  (*Id.*)  Plaintiff further argues that preclusion is a harsh remedy that should not be

imposed under these circumstances, where Plaintiff did produce the documents in question —

although the production was belated — Defendants suffered no prejudice, Plaintiff was not

acting in bad faith, and the evidence is critical to Plaintiff being able to maintain his lawsuit.

Under Rule 37 of the Federal Rules of Civil Procedure, if a party fails to provide

information or identify witnesses as required by Rule 26(a) or (e), the party may not use that

information or witness to "supply evidence on a motion, at a hearing, or at trial, unless the failure

was substantially justified or is harmless."  Fed. R. Civ. P. 37; *Matheson v. Kitchen*, 515 F.

App'x 21, 23 (2d Cir. 2013) (quoting *id.*).  Despite the apparently automatic nature of the Rule,

district courts have discretion to impose sanctions other than preclusion.  *See* Fed. R. Civ. P. 37;

*S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ("The district

court is free to consider the full record in the case in order to select the appropriate sanction."

(internal quotation marks and citation omitted)); *Thompson v. Jamaica Hosp. Med. Ctr.*, No. 13-

CV-1896, 2015 WL 3824254, at *2 (S.D.N.Y. June 19, 2015) ("Rule 37 requires that any action

be 'just,' in order to ensure that the 'severity of sanction [ ] be commensurate with the non-

compliance.'" (alteration in original) (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490

F.3d 130, 140 (2d Cir. 2007))); *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 395–96 (S.D.N.Y.

2005) (noting that the imposition of sanctions pursuant to Rule 37 is within the trial court's

discretion and preclusion is not generally ordered), *aff'd on other grounds sub nom. Bellotto v.*

*Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007).  Failure to timely produce documents during

the discovery period is a violation of discovery rules, subject to sanctions pursuant to Rule 37. *See Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc.*, 359 F. App'x 235, 237–38 (2d Cir. 2010). "The purpose of the rule is to prevent the practice of sandbagging an opposing party with new evidence." *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (internal quotation marks omitted). However, preclusion is an "extreme sanction" and, before ordering preclusion, a court must consider less extreme responses, especially if the "failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence." *Webb v. Buchanan Marine, Inc.*, No. 99-CV-3573, 2000 WL 347159, at *2 (S.D.N.Y. Mar. 31, 2000) (quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)); *see also Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (noting that preclusion is a "harsh remedy" to be imposed only in "rare situations" (citation omitted)).

The Second Circuit has identified four factors to be considered on a motion to preclude evidence pursuant to Rule 37: (1) the party's explanation for its failure to comply, (2) the importance of the testimony of the precluded witnesses or of the evidence, (3) any prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony or evidence, and (4) the possibility of a continuance. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *Kam Hing Enters.*, 359 F. App'x at 237. Bad faith is not required to merit preclusion under the rule, but can be taken into account as an explanation for a party's failure to comply with discovery orders. *Design Strategy*, 469 F.3d at 296.

As an initial matter, Village Defendants' objection reiterates arguments made to Judge Boyle at the 2013 status conferences and to Judge Brown in Village Defendants' reply brief in support of their dispositive motion, and thus clear error is the appropriate standard of review for

any previous preclusion ruling. However, because Judge Brown did not expressly address Village Defendants' arguments in the R&R, the Court will conduct the requisite inquiry *de novo*.

The first two factors of the Second Circuit's test weigh strongly against excluding Plaintiff's evidence.[16] The evidence is central to Plaintiff's case, as Village Defendants apparently seek to preclude all but a few of Plaintiff's exhibits, including the relevant transcripts from Plaintiff's criminal trial, and related transcripts from grand jury proceedings.[17] Preclusion, therefore, would functionally result in dismissal of Plaintiff's case, which is a harsh remedy to be imposed only in "extreme circumstances," and after consideration of less drastic sanctions. *See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012); *Thompson*, 2015 WL 3824254, at *4 (noting that dismissal or preclusion of all evidence showing damages would be a "drastic sanction[]", constituting a "denial of access to justice" and "a windfall to its adversary" (internal quotation marks and citation omitted)). In this case, preclusion is especially harsh because Plaintiff's failure to abide by the discovery deadlines is due primarily to Plaintiff's counsel, who pleads that the delay resulted from the disbanding of her law firm and from closure of her offices caused by Hurricane Sandy, and Plaintiff received no

---

[16] The Court is reserving judgment as to whether the criminal trial documents would be admissible at trial for purposes other than impeachment.

[17] Village Defendants are not clear as to what exhibits they find objectionable. At the May 14, 2013 conference before Judge Boyle, Village Defendants objected to "all but ten" of Plaintiff's proposed exhibits on the joint pre-trial order. (May 14 Tr. 11:2–13:19.) One of those ten exhibits not objected to was Plaintiff's Affidavit, and thus Village Defendants have waived their objection to that Affidavit, annexed to the LaSasso Declaration as part of Plaintiff's Opposition to the motions as Exhibit 3. Additionally, Village Defendants cannot credibly object to Judge Brown's reliance on the transcript of the 50-h hearing held in this action, annexed as Exhibit 5 to the LaSasso Declaration, as Village Defendants, by their attorney, conducted that examination and listed said exhibit on the Village Defendants' proposed pre-trial order as an exhibit they intend to use at trial. (*See* Vill. Def. Proposed Pre-Trial Order 3, Docket Entry No. 42-1.)

particular benefit or tactical advantage as a result of counsel's shortcomings.[18] *See Pichardo v. C.R. Bard, Inc.*, 563 F. App'x 58, 62 (2d Cir. 2014) (finding that barring expert evidence, which resulted in dismissal, was not the appropriate sanction when it was clear that the plaintiff herself was without fault in causing discovery delays, and that plaintiff's attorney's "delays and failures to act within the time set by the court's schedule were not strategically designed to disadvantage the adversary, but were simply the product of sloppiness and neglect"); *Byrne v. C.I.R.*, 509 F. App'x 33, 34 (2d Cir. 2013) (finding that the district court should have considered lesser sanctions than dismissal where it was the petitioner's lawyer, not petitioner himself, who "was responsible for failing to advance the case" and that the delay did not benefit the petitioner); *see also World Wide Polymers*, 694 F.3d at 159 ("Finally, '[i]n deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the [misconduct].'" (alteration in original) (quoting *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996))).

As to prejudice, or whether the failures in discovery were "harmless," Village Defendants should not have been surprised that Plaintiff used these documents, and the prejudicial effect on them is minor. Village Defendants' objection focuses on their contention that the documents Plaintiff attempts to use were not produced prior to the discovery deadline — not that the documents were never produced prior to the motion. *See Thompson*, 2015 WL 3824254, at *4 (finding lesser sanctions appropriate where plaintiff missed discovery deadline, made an

---

[18] The fact that Plaintiff's counsel repeatedly attempted to reopen discovery, voluntarily provided discovery, and attempted to conduct depositions on a voluntary basis with opposing counsel further bolsters the conclusion that her actions were not designed to sandbag Defendants' motion or otherwise obtain some tactical advantage in this litigation.

incomplete production, and only partially complied with court's orders). Plaintiff asserts that the majority of the documents presented in Plaintiff's opposition and relied upon by Judge Brown in the R&R, including the criminal trial documents, were produced on March 5, 2013,[19] a month after discovery closed and five months before the pre-motion conference concerning the summary judgment motion was held in this action, and over ten months before Village Defendants' motion was served, (*see* Docket Entry No. 67; Pl. Opp'n 1–2).[20] *See Matheson*, 515 F. App'x at 23–24 (holding that it was error to disregard plaintiff's key fact witness testimony even though the witness's information was not fully disclosed because defendant had notice of the witness more than eighteen months before the summary judgment motion was filed and were presented with the opportunity to take his deposition); *Lore v. City of Syracuse*, No. 00-CV-

---

[19] At the May 14, 2013 conference before Judge Boyle, counsel for Village Defendants indicated that Plaintiff had disclosed "some" of the exhibits. (May 14 Tr. 11:23–12:2.) The main objections at the May 14, 2013 conference appeared to be that the exhibits were not disclosed prior to the February 7, 2013 discovery deadline. (*Id.* at 20:23–21:23.) County Defendants admitted that several of the documents, including the trial transcript and other documents relating to the criminal case, were in their possession and were produced to all parties after the close of discovery. (*Id.* at 26:7–27:13.) Plaintiff contends that, at the time of the March 5, 2013 production, Village Defendants did not object to the production and in fact consented to extending the discovery deadline, as evidenced by the joint letter to Judge Boyle submitted on March 18, 2013, (*see* Docket Entry No. 28). (Pl. Opp'n 2.)

While the Court agrees with Judge Boyle's analysis that this case is a "true mess," (*see* May 14 Tr. 27:13–15), it appears that Village Defendants were on notice of the exhibits' existence and Plaintiff's intention to use them in this action, and were at some point provided with copies of the documents.

[20] Village Defendants do not dispute Plaintiff's assertion that the documents that were produced in March 2013 included the criminal trial documents, documents created by the Village of Hempstead, and criminal background documents relating to Powell. (Pl. Opp'n 1–2.) It appears that the only exhibits Judge Brown relied upon that Plaintiff had not produced in March 2013 are Plaintiff's exhibits 16–19, which are news articles regarding the event. However, Judge Brown does not rely on these articles for the factual assertions therein, but rather for the proposition that Plaintiff's arrest spawned several news articles. (R&R 12–13.) Regardless of whether the fact that these articles exist is subject to judicial notice, *see* Fed. R. Evid. 201, they are not central to the findings in the R&R and do not affect the legal conclusions therein.

1833, 2005 WL 3095506, at *2 (N.D.N.Y. Nov. 17, 2005) (denying motion for preclusion, noting that "[w]hile it may be true that plaintiff failed to adhere to the letter of the discovery rules, the court is convinced that defendants were sufficiently aware of the existence and relevance of the persons in question so that defendants are not being subjected to trial by ambush"); *Wright v. Aargo Sec. Servs., Inc.*, No. 99-CV-9115, 2001 WL 1035139, at *2 (S.D.N.Y. Sept. 7, 2001) (denying motion to preclude five defense witnesses, as plaintiff was not harmed by defendant's failure to timely disclose, in part because plaintiff was made aware of the identities of the witnesses through other means). Furthermore, Village Defendants ignore the fact that Judge Boyle, at the status conferences, permitted the parties to continue discovery on a voluntary basis and indicated that the criminal trial documents provided Plaintiff with a record. (Apr. 11 Tr. 6:12–20, 14:19–25, 22:4–9.) While none of Judge Boyle's statements explicitly permitted Plaintiff to use the specific documents presented in his opposition to the motions for summary judgment, Judge Boyle strongly implied that documents (a) voluntarily produced, or (b) known to all parties because they were part of the criminal record[21] could be used in support of or in opposition to the motion for summary judgment.

Finally, because of the time frame involved and the extent of the discussion between the parties regarding the disputed discovery, whether a continuance is possible is less relevant, and

---

[21] Plaintiff also argues that the criminal trial documents were subject to judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. On a motion to dismiss, a court is permitted to take judicial notice of trial transcripts from an associated case not for the truth of the matter asserted in the transcripts, but rather to establish the fact of litigation, filings, or "to determine what the respective parties said." *Coggins v. Cty. of Nassau*, 988 F. Supp. 2d 231, 242 (E.D.N.Y. 2013) (reviewing associated court documents on motion to dismiss), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) and *cert. denied*, 135 S. Ct. 2335 (May 18, 2015); *see Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Additionally, "[s]worn testimony from another trial is admissible on a motion for summary judgment" provided it is relevant and based on personal knowledge. *Kraft Gen. Foods, Inc. v. Cattell*, 18 F. Supp. 2d 280, 284 (S.D.N.Y. 1998).

does not outweigh the other factors. While the Court is "frustrate[ed] with the lackadaisical manner in which this case was litigated," such frustration is not grounds to conclude that precluding nearly all of Plaintiff's evidence is warranted under the circumstances. *See World Wide Polymers*, 694 F.3d at 160. Given these considerations, the Court finds that Judge Brown's implicit decision not to exclude Plaintiff's evidence as to this motion[22] was not clearly erroneous — and was in fact warranted.

### iii. False arrest

As to Judge Brown's substantive findings, Village Defendants only challenge his conclusion that there were genuine disputes of fact as to whether Wing and Pettus "instigated" Plaintiff's arrest.[23] (R&R 25.) Village Defendants argue that, as a matter of law, Wing and Pettus cannot be liable for Plaintiff's false arrest, presumably under either federal or state law, as there is no evidence that Wing or Pettus effectuated or instigated Plaintiff's arrest. (Def. Obj. 9–10.) Village Defendants appear to contend that Judge Brown erred in concluding that Pettus, by escorting Powell to the County Police Department to provide his statement, was instigating or effectuating Plaintiff's arrest because "a father cannot be deemed to be effectuating an arrest merely by escorting his child to the police department." (*Id.*) Plaintiff contends that the Village

---

[22] Furthermore, as this Court stated at the August 23, 2013 conference, Plaintiff was permitted to proceed with his opposition to this motion by presenting testimony of his proposed witnesses in affidavit form. (Aug. 23 Tr. 20:11–19, 26:12–27:10.)

[23] As discussed above, *supra* n.14, Village Defendants challenge Judge Brown's treatment of their Rule 12(c) motion as a motion for summary judgment, rather than a motion for judgment on the pleadings, and argue that the claims for First Amendment retaliation and conspiracy should have been dismissed pursuant to Rule 12(c). Village Defendants did not raise any substantive arguments as to the evidence supporting Plaintiff's First Amendment retaliation claim in their memoranda in support of their motion for judgment on the pleadings, and cannot now raise this argument for the first time in an objection to Judge Brown's R&R. As for the claim of conspiracy, and the unchallenged claim of abuse of process, the Court has reviewed Judge Brown's R&R and finds no clear error. Thus, those portions of the R&R are adopted.

Defendants' arguments were considered and rejected by Judge Brown.  (Pl. Opp'n 17.)

In assessing Fourth Amendment false arrest claims brought under Section 1983, courts generally look to the law of the state in which the arrest occurred.  *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007).  To prevail on a false arrest claim under New York law, a plaintiff must prove that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims).  A third party may not be liable for false arrest if he merely reports a suspected crime, and the police act independently to investigate that crime.  *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997); *see also Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015) (holding that defendant, a private individual, cannot be liable for false arrest even if he provided materially incomplete information to State Police, which resulted in plaintiff's arrest).  However, if the evidence indicates that the third party *intended* or *instigated* the plaintiff's arrest, liability may be extended.  *King*, 111 F.3d at 257.

Village Defendants misconstrue Judge Brown's findings and the case law supporting Judge Bown's conclusion.  Village Defendants contend that Judge Brown's reliance on *Anilao v. Spota*, 774 F. Supp. 2d 457 (E.D.N.Y. 2011), was misplaced.  They argue that in *Anilao*, "the Court held that a defendant cannot be held liable for affirmatively instigating or procuring a false arrest when he merely provides information to the police."  (Def. Obj. 9.)  While it is correct that the court in *Anilao* did note this rule, the opinion continued: "a successful false arrest claim [against someone other than the arresting police officer] requires allegations that the private

defendant affirmatively induced or importuned the officer to arrest. Thus, where an individual instigates an arrest and does so based on knowingly false information, that individual may be held liable for false arrest." *Anilao*, 774 F. Supp. 2d at 510–11 (internal quotation marks and citations omitted) (denying private defendants' motion to dismiss false arrest claim, except as to two particular defendants).

Judge Brown found that the record indicated that Powell contacted Pettus, his father and Village of Hempstead Trustee, about the March 7, 2010 incident, that Pettus called Wing, the Village of Hempstead Police Chief, and Wing called someone at the Nassau County Police Department. (R&R 25) When Plaintiff was interrogated prior to his arrest, he was told that the arrest was "coming from 'down there,' referring to the [Hempstead Police Department], and that the arrest was 'political.'" (*Id.*) Based on this evidence, a reasonable jury could conclude that Pettus and Wing contacted the Nassau County Police Department in order to induce Plaintiff's arrest. *See McNamara v. City of New York*, No. 06-CV-5585, 2009 WL 735135, at *4 (S.D.N.Y. Mar. 20, 2009) (denying motion for summary judgment as to false arrest claim because "a reasonable fact finder could infer that [the non-arresting detective] knowingly made a false reporting to the on-duty officers . . . *in order to* have the on-duty officers carry out his intent to have [p]laintiff falsely arrested" (emphasis added)); *see also Camac v. Long Beach City Sch. Dist.*, No. 09-CV-5309, 2011 WL 3030345, at *8 (E.D.N.Y. July 22, 2011) (finding false arrest claim adequately pleaded, on motion to dismiss, when plaintiffs alleged that individual "contacted the police and provided false information that would case the police to confine" plaintiff's minor son). The Court adopts Judge Brown's recommendation and denies the Village Defendants' motion for summary judgment as to Plaintiff's false arrest claim against Wing and Pettus.

### iv.   Unopposed recommendations

The Court has reviewed the unopposed portions of the R&R, and, finding no clear error, pursuant to 28 U.S.C. § 626(b)(1), the Court adopts Judge Brown's recommendations that the Court (1) dismiss as withdrawn Plaintiff's claims of defamation and intentional infliction of emotional distress, (2) grant summary judgment as to Plaintiff's *Monell* claim against the County of Nassau and Village of Hempstead, (3) deny summary judgment as to Plaintiff's Section 1983 claims for false arrest against all other individual Defendants, First Amendment retaliation against Wing and Pettus, conspiracy against Wing, Pettus, Yao, Decaro, Dorsi and Skrynecki, and Plaintiff's state law claims for false arrest against all other individual Defendants and abuse of process against Pettus and Wing, and (4) deny Plaintiff's motion to amend the Complaint as moot.

## III.   Conclusion

For the foregoing reasons, the Court adopts Judge Brown's R&R in its entirety.  The Court grants the motions for summary judgment with respect to the *Monell* claim against the County of Nassau and the Incorporated Village of Hempstead, dismisses Plaintiff's claims of defamation and intentional infliction of emotional distress under New York State law as withdrawn, and *sua sponte* dismisses, without prejudice, all claims against John Does #1–5, and orders Plaintiff to show cause within twenty (20) days as to why the action should not be dismissed against Powell for failure to effectuate service.  The Court denies the motions for summary judgment as to Plaintiff's Section 1983 claims for false arrest against all individual Defendants, First Amendment retaliation against Wing and Pettus, conspiracy against Wing, Pettus, Yao, Decaro, Dorsi and Skrynecki, and Plaintiff's state law claims for false arrest against

all individual Defendants and abuse of process against Pettus and Wing. Plaintiff's motion for

leave to amend is denied as moot.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: July 28, 2015
      Brooklyn, New York